(8 Misc. Rep. 660.)

### JONES et al. v. JONES et al.

(Supreme Court, Special Term, New York County.    May, 1894.)

1. TRUSTS—REMOVAL OF TRUSTEE—JURISDICTION.
    The court has power, where all the parties in interest are before it, to remove resident trustees, and compel an accounting, though the trust property is situated wholly in another state.
2. SAME—CONVEYANCE TO CESTUI QUE TRUST—WHEN DENIED.
    Where a trust, void under the statutes of New York, has been established in an action between the parties in the jurisdiction wherein the trust property is situated, the trustees will not be compelled, in an action in New York, to convey the property to the cestuis que trustent.
3. SAME—TRUST FOR A CLASS—DISCRETION OF TRUSTEE.
    A devise in trust for the benefit of children, to be used wholly, or in such parts or shares as the trustees see fit, confers no discretion on the trustees to discriminate between the beneficiaries, and whatever amount is used must be used for the equal benefit of all.
4. SAME—CONTROL OF DISCRETION.
    The discretion of trustees may be controlled by a court of equity, and cannot be arbitrarily exercised, so as to deprive a beneficiary of all benefit from the trust.
5. SAME—ABUSE OF DISCRETION—REMOVAL OF TRUSTEE.
    Where a trustee is invested with discretion as to the amounts to be paid the beneficiaries, it is an abuse of discretion, for which she will be removed, to deprive one beneficiary of all benefit from the trust because his marriage displeased her, and another because she disagreed with his mother as to his schooling and residence.
6. ACTION TO ENFORCE TRUST—PRAYER OF COMPLAINT—RELIEF.
    In an action to compel performance of a trust, under a prayer that the trustees be compelled to convey to plaintiffs, and for further relief, the trustees may be removed.
7. TRUSTEES UNDER FOREIGN WILL—JURISDICTION TO REMOVE.
    Trustees under a will proved in another state, who reside in this state, may be removed by a court of this state.
8. SUPREME COURT—EQUITY POWERS.
    The supreme court of New York has inherent equity power to remove a trustee.

Action by Alexander McK. Jones and others against Caroline Ogden Jones and others, as trustees, to compel the execution of a trust contained in a codicil to the will of Caroline Ogden McCagg, deceased. A judgment was entered, removing the trustees, and said trustees and defendant Macfie move to vacate the judgment.

For former report, see 27 N. Y. Supp. 274.

The codicil is as follows:

"I, Caroline Ogden McCagg, formerly of Chicago, in the state of Illinois, at present residing in New York City, state of New York, now traveling in Europe, do make, publish, and declare this to be the first codicil to my last will and testament. I revoke the fourth clause on the second page of my last will, and add the following amended clause: Upon the death of my said sons, William Ogden Jones, Mahlon Ogden Jones, or Louis Butler McCagg, I direct my said trustees or trustee to give the part or share or parts or shares set apart for the use and benefit of the said deceased son or sons during his or their lives to my said daughters Caroline Ogden Jones and Frances Ogden Jones, or the survivor of them then living, to be used by them or the survivor of them, either wholly, or in such parts or shares as they or the survivor of them, in their or her discretion, shall deem desirable, for the benefit of the children, if there should be any living, of said deceased son or sons."

Johnston & Johnston (Edward W. S. Johnston, of counsel), for plaintiffs.

Cary & Whitridge (Willard Parker Butler, of counsel), for trustees.

ANDREWS, J. After a careful examination of the pleadings, evidence, and elaborate briefs of counsel, I have reached the following conclusions:

1. The court has jurisdiction of the action. The plaintiffs and the defendant trustees are residents of this state. Mr. E. W. S. Johnston has been duly appointed guardian ad litem of the infant William E. Jones. The complaint states that Mrs. Macfie has refused to become a plaintiff, and is therefore made a defendant. All the parties in interest are before the court, and the court has jurisdiction, if it should see fit to exercise it, to the extent even of compelling the defendant trustees to convey the real estate and personalty, although both are situated in the state of Illinois. It certainly has jurisdiction to compel the resident trustees to account, and to pay over any income which shall come into their hands. That the law is as above stated has been decided in many cases.

2. The court will not decline to entertain jurisdiction of this action, because to do so would be a gross injustice to the plaintiffs. Several years since the defendant trustees brought an action in the circuit court for Cook county, Ill., to obtain a construction of Mrs. McCagg's will, and to obtain partition. The case is reported under the title of Jones v. Jones, 124 Ill. 254, 15 N. E. 751. In that action the defendant trustees claimed that the will and codicil did not establish a trust for the benefit of the children of William Ogden Jones, deceased, but that the one-fifth part of the estate of Mrs. McCagg which had been held in trust for said William Ogden Jones was given to said trustees absolutely, and free from any trust in favor of the plaintiffs and Mrs. Macfie. The claim on the part of

the defendant trustees was not sustained by said circuit court, which held, on the contrary, that the will and codicil did establish a trust in favor of the plaintiffs and Mrs. Macfie, and that said one-fifth part of the estate of Mrs. McCagg was held in trust by said trustees upon the trusts set forth in the codicil to said will. Counsel for the defendant trustees now claims that as the real estate so held in trust is located in the state of Illinois, and the personal property is also held in that state, the validity of the will and codicil, and the interpretation thereof, must be determined according to the laws of that state. It must be conceded, for the purposes of this case, that this claim is well founded. The property, both real and personal, is undoubtedly situated in the state of Illinois; and although Mrs. McCagg had been separated from her husband for many years before her death, and had resided in New York and Newport, and although her will recites that she is a resident of the state of New York, still, as she had never been divorced from Mr. McCagg, and as he resided in the city of Chicago, it must be conceded that she had no domicile separate from her husband, and that, not only so far as the real estate, but also so far as the personal property, is concerned, the validity and interpretation of her will must depend upon the laws of the state of Illinois. Counsel for the defendant trustees further claims that the court should not entertain jurisdiction of the action because it will be necessary to pass upon the validity of a trust created under the laws of the state of Illinois. The answer to this contention is, the court has no occasion to pass upon the validity of the trust. This question, as to the validity of the trust under the laws of Illinois, has been disposed of by the highest court in that state, which has held that the will and codicil do establish a valid trust in favor of the plaintiffs and Mrs. Macfie. Counsel for the defendant trustees also claims that the court ought not, even if it has the power, to compel the trustees to convey the real estate and personal property in question, as prayed for in the complaint, because the supreme court of Illinois has decided that they hold such real estate and personal property in trust, and that, although such trust is void under the statutes of New York, a decision in this action compelling them to make such conveyance would conflict with the decision of the courts of Illinois in Jones v. Jones, 124 Ill. 254, 15 N. E. 751. The answer to this contention is that this court is well aware that the judgment in Jones v. Jones is binding on all the parties to this action, and will not disregard the judgment in Jones v. Jones, and compel the defendant trustees to make such a conveyance. I see no reason, however, why, if a proper case has been made out, this court should not compel the defendant trustees to account, and to pay over to the plaintiffs a portion of the income of the property held in trust by them. It is not necessary in disposing of the question of an accounting, and of the payment of income, for this court to determine what the common or statute law of the state of Illinois is in regard to the creation and validity of trusts. The only questions which the court will determine are whether the defendant trustees have performed their duties in accordance with the judg-

ment rendered in Jones v. Jones, and whether, if they have not, it will compel them to do so. There was a long litigation in the courts of Illinois, and, as above stated, the defendant trustees contended that no trust existed in favor of the plaintiffs and Mrs. Macfie; but such contention was not sustained, the court holding that the trustees held one-fifth of Mrs. McCagg's estate in trust for the plaintiffs and Mrs. Macfie. Since that decision the trustees have for several years refused to pay the plaintiffs any income whatever; and for the court now to decline to take jurisdiction of the action, and send these unfortunate plaintiffs out to the state of Illinois, to obtain their rights through another tedious and expensive litigation, would, in my opinion, be an act of the grossest injustice to them.

3. The defendant trustees admit that the decision of the courts of Illinois was as above stated, but their views and intentions as to the execution of the trust devolved upon them by the will and codicil are set forth at page 65 of the brief of their counsel in the following language:

"We intend to execute it in the following manner, namely, by retaining all of the corpus in our hands, and investing and reinvesting it, as we think it best not to give any part of the corpus to the children of William Ogden Jones. We intend to pay all or part of the income, as to us seems wisest, to any one of the children to the exclusion of the other two, and to accumulate the balance, or, as to us seems wisest, to pay all or part of it to any two, in equal or unequal shares, to the exclusion of the other, and accumulate the balance; or we intend, as to us seems wisest, to pay all of it or part of it to all three, in equal or unequal shares, and accumulate the balance. For the present, however, we propose to pay all of it to Mrs. Macfie, if it seems wisest."

In my opinion, this claim as to the manner in which the defendant trustees are entitled to execute the trust reposed in them finds no support whatever either in the language of the will or codicil, or in the judgments of the courts of Illinois, or in the opinion rendered by Mr. Justice Shope, of the supreme court of that state, or in the general rules which obtain in the courts of Illinois, and in this and other states, for the construction of wills, or in the circumstances surrounding the execution of the will and codicil of Mrs. McCagg. It seems to me that the meaning of the codicil, as to the manner in which the trustees are to use the principal and income of the trust, must be plain enough to any person who really desires to ascertain its meaning, and the courts of Illinois found no difficulty in interpreting it. It plainly declares that the property held in trust, both principal and income, is to be used for the benefit of the three children of William Ogden Jones. The trustees are given a discretion as to the amount of principal and income which shall be used from time to time, but whatever, either of principal or income, is used, must be used for the benefit of the three children equally. This is the plain meaning of the codicil, and in my opinion it cannot be construed in the manner contended for by the counsel for the defendant trustees. It is not necessary, however, to rely upon my own views as to the meaning of the codicil in question, for, as above stated, the question as to the meaning of the codicil has been passed upon by the circuit court of Cook county and the supreme court of the state of Illinois, and the judgment

of the former court, which was affirmed by the higher court, is, as I read it, entirely in accordance with the views above expressed. The decree of said circuit court, which is to be found at page 258 of 124 Ill., and page 751 of 15 N. E., contains the following:

"On hearing in the circuit court, the court, in fixing the rights of the children of William Ogden Jones, deceased, decreed as follows: And that, under the terms and conditions of said will and the codicil thereto, one equal fifth part of the said estate of Caroline Ogden McCagg, including the real estate owned by her at her decease, and hereafter described, is to be given to the said Caroline Ogden Jones and Frances Ogden Jones jointly, as trustees, for them and the survivor of them to use for the benefit of the said defendants Alexander M. Jones, Julia H. Jones, and William E. Jones, the children of William Ogden Jones, deceased, with power, as such trustees and as such survivor, to use the said one-fifth part or share either wholly for the benefit of said children, in equal parts or shares, or to use the same in such parts or shares for the benefit of said children, respectively, as they, the said trustees, or the survivor of them, shall, in their or her discretion, deem desirable."

It seems to me impossible to construe the language above quoted as meaning that the trustees have any such discretion as, according to the above statement of their counsel, is claimed by them. The opinion of Mr. Justice Shope, of the supreme court of Illinois, shows that he did not consider that the trustees have any such discretion as they claim to have. In the course of his opinion, after quoting the language of the codicil, he said:

"This language precludes the idea of an intention to make an absolute gift of such share to the daughters. The share was to be used by them for the benefit of the children. The purpose for which the daughters are to take is definitely fixed by the language employed. It is for the use of the children of a deceased son. * * * It is apparent, we think, that this fifth share was, by the will and codicil, placed in the hands of the daughters in trust, to be used by them for the benefit of the children of the deceased son. * * * Much stress is laid upon the words 'wholly or in such parts as they (the trustees), or the survivor of them, in their or her discretion, shall deem desirable,' etc. It is evident, we think, that the testatrix had in contemplation—one son already having died—that there might be the death of others before her decease, and intended making a provision that would apply in that event to the shares of each of such sons. As to the children of William, they being minors, the daughters, as their trustees, might apply this share wholly at once for their benefit, or in such part as they might deem most beneficial to them. The trustees were made the judges of what use of the estate was most for their benefit. Undoubtedly, if they deem it most desirable, they had discretion to invest the funds in their hands for the use and benefit of the cestuis que trustent, or to provide for their support and education, expending such sums therefor as to them might seem desirable."

The question which the circuit court and the supreme court had before them was whether the codicil established a valid trust, and, if so, what was the nature of that trust; but neither in the decree of the circuit court, which was affirmed by the supreme court, nor in the opinion of the supreme court, is there one solitary expression which tends to support the claim of the defendant trustees as to the manner in which they are empowered to execute the trust in question. On the contrary, the decree of the circuit court, which was affirmed, and the opinion of Mr. Justice Shope, plainly show that both courts considered that the property was held in trust for the equal benefit of the three children; and it seems to me that the

claim of defendants' counsel, that, if the trustees had seen fit to pay over the whole corpus of the estate at once to the three children, they must have given to each an equal one-third, but as they saw fit to retain the corpus, and pay over the income only, they can pay the whole of such income to one child, without paying anything whatever to the other two, is, to say the least, a most extraordinary and illogical one.    It has been decided over and over again, in this and other states, that, when a legacy is given directly to or in trust for several persons, the beneficiaries, being of the same class, take in equal shares, and I see no reason why the rule so universally laid down is not applicable to the present case.  Moreover, the circumstances surround· ing the making of the codicil, if they are to be taken into account, indicate that the true construction of the codicil is as above stated. William Ogden Jones, the father of the plaintiffs and the defendant Mrs. Macfie, had died, and, according to the terms of the original will of Mrs. McCagg, his children would have received nothing. Thereupon, the testatrix executed the codicil for the express purpose, among other things, of making provision for the three children of her said deceased son.  With regard to this point, Mr. Justice Shope, in his opinion, states as follows:

"If the testatrix had intended no provision for the benefit of the children of her deceased son, there was no necessity for revoking the sixth clause of the will, or of changing the fourth.   The precise result contended for by appellants would have occurred if the codicil had not been made, so far as the effect upon the children of the deceased son is concerned.   The will and the codicil are to be construed together in the light of the circumstances surrounding the estate and the testatrix at the time they were severally made.  As before stated, it is to be presumed that, in making the change in her will in respect to her grandchildren, she designed and intended to change the disposition of her estate as to them, and understood and intended that the language employed by her should have its legitimate and recognized effect ˙ in producing  that result."

It is incredible to me that the testatrix, while making this codicil for the express purpose of providing for the three children of her deceased son, should have intended to so discriminate between them as to put it in the power of the trustees to use the one-fifth of her estate given to them in trust, principal and interest, for the sole benefit of one of said three grandchildren, to the entire exclusion of the other two, and I do not believe that the language of the codicil ought to be, or can be, so construed.   The trustees, as above stated, undoubtedly have a discretion as to how much of the principal and income shall be used from time to time, but whatever amount is used, whether of principal or income, must be divided equally between the three children.

4. The counsel of the defendant trustees claims that the exercise of the discretion vested in them by the codicil cannot be interfered with or controlled by the courts, but I regard this position as wholly untenable.   The defendant trustees profess great anxiety that their rights, in all respects, shall be determined according to the laws of the state of Illinois, and not according to those of the state of New York.   It is well, therefore, to refer to what Mr. Justice Shope,

of the supreme court, said upon the subject. At page 264, 124 Ill., and page 753, 15 N. E., his opinion reads as follows:

"The share thus set apart was not to be paid over to the daughters absolutely, or for their own benefit, but for the use designated by the donor in the creation of a trust. The daughters, as trustees of this share, are not invested with discretion to withhold the trust fund absolutely from the cestuis que trustent. The fund is not theirs in equity, and they cannot make it so by a refusal or neglect to exercise the discretion vested in them. Their discretion as trustees of this fund is subject to the control of the courts of equity, and cannot be arbitrarily exercised, so as to deprive the beneficiaries of all benefit of the fund. * * * But it is unnecessary to discuss this branch of the subject, as the decree of the court does not seek to interfere with the discretion vested in the appellants, or direct the manner of its exercise. When that discretion is abused, if it ever is, will be time for a court of equity to interfere."

Many pages of the brief of the learned counsel of the defendant trustees are occupied with quotations from decisions in cases where it has been held that courts of equity would not interfere with the exercise of the discretion vested in trustees. These cases, although cited on behalf of the defendant trustees, are the very best authorities that could be cited on behalf of the plaintiffs, for in every case it is expressly stated, or it is to be fairly implied from the language used, that the rule invoked on behalf of the defendant trustees has no application in cases where trustees either abuse the discretion vested in them, or act in bad faith.

5. I have carefully examined the evidence in this case, and I feel constrained to say that in my opinion it is abundantly proven that the defendant trustees have not only abused the discretion vested in them by the testatrix, but that they have also acted in bad faith, in withholding all income from the plaintiffs. With regard to the plaintiff Alexander McK. Jones, it appears that all income has been withheld from him for a number of years because he married contrary to the wishes of the trustees. His account of the matter is somewhat different from that given by Miss Caroline Ogden Jones in her deposition. He testified in open court that he consulted his aunt in reference to his proposed marriage, and that she consented to it, and said that she would do whatever she could for him, but that afterwards, and when he had become engaged to the lady whom he afterwards married, the aunt forbade the marriage; that under the circumstances, feeling himself in honor bound to carry out his contract of marriage, he accordingly was married to the lady of his choice. Miss Jones testified in her deposition that she never consented to the marriage, but that she forbade it at the outset, because of his youth and certain mental and physical infirmities, and told Alexander that if he did marry she would withhold all income from him, and that, the marriage having taken place, she did afterwards withhold all income from him, and for the reason that he had married contrary to her wishes. She does not testify that the lady in question was not an entirely proper person for said Alexander to marry, if he married at all, and the appearance of said lady upon the witness stand satisfied me that no just exception to her person or character could be taken. The appearance of said Alexander, also, upon the witness stand, taken in connection with

his testimony and that of the physician, convinced me that he should have been allowed to decide the marriage question without the interference of the trustees, and that the fact that he did marry against their wishes furnished no reasonable ground for withholding all income from him. With regard to the plaintiff William E. Jones, there are some slight variances between the testimony given by his mother in court and that given by Miss Caroline Ogden Jones in her deposition. They both testify, however, in substance, that Miss Jones and the mother of William E. disagreed in regard to the schooling and residence. The mother desired that he should reside with her, and should go to schools of her selection. The aunt desired that he should be sent away to school, with a tutor; and the aunt testified that, because her wishes in this regard were not respected, she withheld all income from the said William E. Jones. Leaving out entirely the testimony given by Alexander McK. Jones and his mother and William E. Jones, and assuming that the evidence given by Miss Caroline Ogden Jones in her deposition is strictly true, I regret that I am obliged to say that her evidence conclusively shows that her refusal to pay any income to the plaintiffs, and her proposal to pay the whole income of the property held in trust by her and her sister to Mrs. Macfie, was an arbitrary, malicious, and unlawful act. Such act was not a reasonable and fair exercise of the discretion vested in the trustees as to the amount of the principal and income of the trust fund which should be divided between the three children, but an unwarranted and vindictive punishment of one of the plaintiffs because he had married contrary to the wishes of the trustees, and of the other plaintiff (a young boy) because his mother desired to have, and did have, something to say in regard to his schooling, and also desired to keep, and did keep, him with her, instead of sending him off, with a tutor, among strangers. In my opinion, this conduct on the part of the trustees would have justified the court, upon a proper application, in summarily removing them, and in appointing others in their places, and it now makes it the duty of the court to exercise all the powers it possesses to redress this great wrong on the part of the trustees.

6. The next question is as to what power the court possesses in this regard, and upon this point I am compelled to differ with the learned counsel for the plaintiffs, whose contention that the court has the power to compel the trustees to convey the entire trust property to the plaintiffs and Mrs. Macfie seems to me to be wholly untenable. As above stated, the property consists in part of real estate situated in the state of Illinois, and in part of personal property which is also held in that state. Counsel for the plaintiffs claims that the fee of said real estate and the title to such personalty are vested in the three children of William Ogden Jones. This view, however, is contrary to the plain meaning of the codicil and the decision of the courts of Illinois. The codicil provides, among other things, that upon the death of William Ogden Jones, the father of the plaintiffs and Mrs. Macfie, the trustees named in the will shall give the part or share set apart for the use and benefit of the said deceased son to the defendant trustees, to be used for

the benefit of his children. Moreover, the said three children were parties to the above-mentioned suit brought in the circuit court of Cook county, Ill., and they are bound by the judgment rendered in that action; and the decree entered therein declared that all said one-fifth of the estate of Mrs. McCagg is held in trust by the defendant trustees for the benefit of said three children, with certain discretionary powers. Mr. Justice Shope, of the supreme court, in his opinion, at page 265, 124 Ill., and page 753, 15 N. E., says:

"Both the daughters taking this share in trust for the children of the deceased son William are living, and it is unnecessary to discuss or decide whether they hold as joint tenants or not. It is enough that they took no beneficial interest therein, but simply held the same in trust for the defendants, children of their deceased brother William. It may, however, be added that, as the survivor is required to use this share for the use and benefit of the children indicated, it is manifest that it was to be kept intact for such use, for if each of the trustees took an equal part the survivor would be unable, or might be, to use the whole for the benefit of the cestuis que trustent."

It is true that the codicil does not, in terms, state what disposition is to be made after the death of the surviving trustee, nor does it, in terms, provide what shall become of the property in case of the death of one or more of the children. The failure of the codicil to expressly declare what shall become of the property in these two events does not affect the fact that at the present time the title of the real and personal property is vested in the defendant trustees, upon certain trusts and with certain powers, and that the plaintiffs and Mrs. Macfie have no present right to have the property conveyed to them. The question as to the final disposition of the property upon the death of the surviving trustee, and as to what shall become of it in case of the death of one or more children, will not, I imagine, prove to be questions of difficulty, when they shall arise; but they are not involved in the present inquiry, and I express no opinion in regard to them, but leave them for future determination, when they shall arise.

7. It does not follow, however, that the court is powerless to redress what I regard as a wrong done to the plaintiffs. It undoubtedly has the power to order a reference for the purpose—first, of taking an accounting of the acts of the trustees in relation of the trust property, and of ascertaining how much income they have received and how much they have paid out, and how much they have on hand; and, secondly, of ascertaining how much of the income or principal, or of both, is necessary for the suitable support of the plaintiffs. Upon the coming in of the report of the referee, the court will also have the power, if it sees fit, under the prayer of the complaint for further relief, to remove the trustees, and appoint others in their stead, and to direct payment of such amount as shall be necessary for the support of the plaintiffs, or it may leave the present trustees in office, and compel them to make payment of such amount. Moreover, as the trustees admit that they have on hand many thousand dollars of unapplied income, and as it does not require any further testimony to satisfy me that it is absolutely necessary that the plaintiffs should receive something at once for

their support, I see no reason why the interlocutory judgment to be entered should not direct the immediate payment of some amount.

8. As plaintiffs' findings are not all drawn in accordance with this opinion, their counsel may submit further findings if they see fit, or, if they do not desire to do so, they can so notify me, and I will then dispose of the case upon the findings already submitted.

9. Some of the testimony given by Charles H. Holt under the commission which was put in evidence seems to me to be immaterial, and some of it seems to me to be incompetent; but in view of the disposition which, as indicated in the foregoing opinion, I think should be made of the case, I have concluded to overrule the objections of plaintiffs' counsel to the 8th, 9th, 10th, 11th, 12th, 14th, 15th, and 16th interrogatories which were administered to said Holt, and to deny the motion to strike out the several answers thereto. The record will indicate that plaintiffs' counsel has an exception to each of such rulings. Ordered accordingly.

### On Motion by Trustees to Vacate Judgment.

ANDREWS, J. This is a motion made by the defendant trustees to vacate the judgment heretofore entered.

1. It is claimed that this motion should be granted because said trustees were removed entirely on ex parte proceedings, without being given a day in court, and without being permitted to offer any evidence in justification of their acts. I am wholly unable to understand upon what ground this claim is made by the counsel for the defendant trustees. The complaint in this case did not charge that the defendant trustees had appropriated any of the trust funds to their own use, but it did charge gross misconduct on their part, in refusing, for frivolous reasons, to pay over to the plaintiffs any portion of the principal of the trust funds in their hands, or the interest received by them thereon. The prayer of the complaint was that the said trustees should be compelled to pay over to the plaintiffs and the defendant Mrs. Macfie the whole of such trust fund. This was not, in terms, a prayer for the removal of the defendant trustees, but it was equivalent to such a prayer; for, if the defendant trustees had been compelled by the court to turn over the whole fund to the plaintiffs and the defendant Mrs. Macfie, they would have been, in effect, removed from their position as trustees, for there would have been no further functions for them to perform as such trustees. The case was brought on for hearing at the regular special term, and testimony was taken upon both sides. The deposition of the defendant Miss Caroline Ogden Jones was read in evidence, in which she went into an elaborate statement of her conduct as such trustee, and sought to justify all that had been done and not done by her and her sister in the execution and nonexecution of the trust. Very elaborate briefs were submitted on both sides. The brief of the counsel for such trustees, according to my recollection, covered between 60 and 70 pages of printed matter, and in that brief he not only claimed that the court had no jurisdiction of the action, but that, if it had jurisdiction, it should decline

to entertain it; and he also made an elaborate argument in which he sought to show that the defendant trustees were entirely justified in doing what they had done, and in refusing to do what they had not done. The case was most carefully considered by me, not only with reference to the question of jurisdiction, but with reference to the merits. The result of my consideration was embodied in a somewhat lengthy opinion, in which I stated that I thought the conduct of the trustees would have justified the court in summarily removing them; and I also further stated that, while I did not agree with counsel for the plaintiffs in their claim that the trustees could be compelled to convey the trust fund to the plaintiffs and Mrs. Macfie, I was of the opinion that the court could order an accounting, and compel the trustees to pay over to the plaintiffs some portion of the income received from the trust property, and could, under the prayer for general relief contained in the complaint, remove the trustees, if it saw fit to do so. Subsequently, judgment was entered herein; and if there ever was a case in which the defendants had a full and fair trial upon the merits, and received a most careful consideration of their case, this is such a one, and I see no reason whatever why the judgment entered herein should be vacated upon the ground above suggested.

2. It is claimed that the judgment should be vacated because the action was not to bring about the removal of the trustees, but simply one to compel them to perform a trust. This claim has been fully answered in what has been hereinbefore stated. Although the complaint did not, in terms, pray for the removal of the trustees, it did allege misconduct on their part, in refusing to pay to the plaintiffs any portion of the principal or income, and did pray that the court should compel them to turn over the whole fund, principal and interest, to the plaintiffs and the defendant Mrs. Macfie. This was certainly equivalent to a prayer for their removal, because, if such relief had been granted, they would have no further functions to discharge as trustees, and under the prayer for further relief, while the court held that the plaintiffs could not have the property turned over to themselves and Mrs. Macfie, it also held that it could remove the trustees, and appoint others in their places, who would honestly and fairly execute the trust created by the will of the testatrix.

3. It is also objected that this court has no power to remove a trustee created by the will of a citizen of a foreign state, never proved in this state. It is true, as claimed by counsel, that the courts of this state cannot remove, or exercise disciplinary control over, a foreign executor. The rule, however, is otherwise as to trustees appointed by a will which has been proved in another state, who reside in this state. Thus the doctrine is laid down in Perry on Trusts, and is fully supported by the cases there cited.

4. It is objected that the New York supreme court has no power to remove the defendants, because such power is given by statute, and is expressly limited to the cases covered by the statute, and that the case at bar is not one of them. The answer to this proposition is that the defendant trustees were not removed under and pursuant

to the power given by statute, but under the general inherent power which courts of equity have over trusts and trustees.

5. The judgment herein was duly and regularly entered, after a trial at the special term, and the remedy of the defendant trustees, if they feel aggrieved thereby, is not by a motion of this character, but by an appeal from the judgment.

6. The motion should in all respects be denied, without costs. The order will be settled on notice.

### On Motion by Defendant Macfie to Vacate Judgment.

ANDREWS, J. This is a motion made by the defendant Mrs. Macfie to vacate the judgment heretofore entered herein. The general objections to such judgment made by the counsel for Mrs. Macfie have been answered in a memorandum filed herewith upon the motion made on behalf of the defendant trustees to vacate such judgment, and it is unnecessary to repeat what is stated in that memorandum. The counsel of the defendant Mrs. Macfie makes a further objection to the persons who have been appointed trustees in place of the original trustees. No suggestion whatever is made against the personal character or ability to discharge the trust of either of such new trustees, nor is any suggestion made that the bond of $250,000, which they have been required to give, is not amply sufficient to protect the interests of all the cestuis que trustent. It is objected, however, that such new trustees are not friendly to Mrs. Macfie; but, after examining all the papers which have been submitted on this motion, I am satisfied that this objection has no foundation, and is not made in good faith. It appears that Dr. L. White, since the commencement of this action, has acted as the physician of Mrs. Macfie, and has been and is now on friendly terms with her. I am also satisfied that Mr. Johnston has no personal ill will against Mrs. Macfie, and has heretofore been upon friendly terms with her, and that he can and will act with entire impartiality as between her and the plaintiffs. It is, moreover, impossible for me to see how the new trustees, if they were so disposed, could do any injustice to Mrs. Macfie. The judgment entered herein adjudicates that each of the plaintiffs and Mrs. Macfie have equal rights to the trust fund, both principal and interest, and that, while the trustees have a certain discretion as to the amount which they will pay over to the cestuis que trustent from time to time, whatever sum, either of principal or interest, is paid over, must be divided equally between the plaintiffs and Mrs. Macfie. The new trustees, therefore, cannot, if they were so disposed, under the terms of the judgment, discriminate in any way against Mrs. Macfie, and I see no reason why either of them should be removed. The motion will be denied, without costs, and the order will be settled on notice. Motion denied, without costs.